IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

North American Rescue, Inc.,  :

    Plaintiff,  :

  v.  :    Case No. 2:09-cv-255
    :
Bound Tree Medical, LLC    JUDGE HOLSCHUH
et al.,  :

    Defendants.  :

## ORDER

This case is before the Court to consider the motion to compel discovery filed by defendants Bound Tree Medical, LLC and Richard Barber (collectively referred to as Bound Tree). This matter has been fully briefed. Additionally, the Court grants plaintiff's motion for leave to file a surreply brief (#45). For the following reasons, the motion to compel will be granted in part and denied in part.

### I. Background

This case involves claims of false advertising under the Lanham Act and unfair and deceptive trade practices under state law. Plaintiff North American Rescue LLC (NAR) and Bound Tree are competitors in the military medical supply sales industry. In its complaint, NAR alleges that Bound Tree made false and misleading statements in marketing materials regarding the quality of Bound Tree's products and that NAR has been damaged as a result. NAR seeks both equitable and monetary relief.

On January 31, 2010, Bound Tree filed a motion which asks the Court to compel NAR to respond fully to five interrogatories and twelve requests for production of documents contained in Bound Tree's second set of interrogatories and requests for production of documents. In its response, NAR states that many

of the documents or interrogatory answers at issues have been
provided, and would have been provided without the need for a
motion had Bound Tree simply given NAR a bit more time to respond
to Bound Tree's written communications about these issues.  Bound
Tree's reply memorandum narrows the focus of the motion to compel
to three interrogatories and five requests for the production of
documents.  Based on the reply brief, the Court construes Bound
Tree's current request as one to compel NAR to respond fully to
Interrogatory Nos. 6, 7, and 8 and Document Request Nos. 6, 9,
16, 17, and 18 and to provide a more complete response to Request
for Production No. 3 as it relates to Robert Castellani.

II. <u>Specific Discovery Requests at Issue</u>

The discovery responses Bound Tree seeks can be separated
into three categories: (1) those relating to NAR's change of
ownership, (2) those relating to Bound Tree's affirmative defense
of unclean hands, and (3) those relating to communications and
documents involving four individual NAR employees or
representatives.  The Court will address each category in turn.

A. <u>NAR's Change of Ownership</u>

The discovery requests at issue relating to NAR's change of
ownership include the following:

> **Interrogatory No. 6**: Identify all
> individuals (including but not
> limited to any companies) who own
> any portion of North American Rescue,
> Inc. and/or North American Rescue, LLC;
> specify the percentage interest owned by
> each individual; and identify the chairman,
> board of directors, board of managers, and
> officers of North American Rescue, Inc. and
> North American Rescue LLC.
>
> **Interrogatory No. 7**: Identify all communi-
> cations, statements, or comments made by
> any representative of NAR to any of the
> individuals identified in response to
> Interrogatory No. 6, or to any other

> individuals (including but not limited to
> any companies) who considered purchasing or
> obtaining an ownership interest in NAR,
> regarding Bound Tree or this lawsuit.
>
> **Document Request No. 16:** Produce any
> communications or other documents related
> in any way to Bound Tree or this lawsuit
> that were provided or made available to any
> individuals who purchased, obtained, or
> considered purchasing or obtaining an
> an ownership interest in NAR.
>
> **Document Request No. 17:** Produce documents
> specifying any individuals (including but
> not limited to any companies) who have
> an ownership in North American Rescue, Inc.
> and/or North American Rescue LLC and
> documents specifying what percentage interest
> is owned by each of these individuals, and
> provide the operating agreement and articles
> of incorporation for North American Rescue
> and North American Rescue LLC.

Bound Tree claims that it is entitled to all of this information because it is relevant to whether NAR, LLC is the real party in interest and whether it has the right to pursue a claim against Bound Tree. NAR contends that this information is irrelevant in light of the notice of substitution which has been filed. To the extent that Bound Tree seeks information identifying its officers and board members, NAR claims that this information is readily available on its website.

NAR attached an affidavit to its motion for substitution (which was granted as unopposed) which explains that on October 9, 2009, substantially all of the assets of the corporation formerly known as North American Rescue Products, Inc. and North American Rescue, Inc. were transferred to North American Rescue. LLC. Those assets included the claims asserted in this lawsuit. A Bill of Sale and General Instrument of Transfer dated October 9, 2009 was also attached which recites that it conveys certain

assets to North American Rescue, LLC.

Certainly, Bound Tree is entitled to know that the current plaintiff has the legal right to sue it for the claims set forth in the complaint. Interrogatory number six and document request number seventeen go far beyond that, however. Nevertheless, because NAR attached only a partial copy of the bill of sale to its motion to substitute, and that copy does not include the list of assets sold, Bound Tree should be given a copy of the document either in its entirety, or, if it contains information that is both irrelevant to the issue of ownership of the causes of action involved in this case and commercially sensitive, a copy designated as confidential or from which the irrelevant and sensitive material has been redacted. That will allow Bound Tree to verify that, indeed, the claims against which it is defending have been transferred to the newly-substituted plaintiff. The Court cannot conceive of how information about the ownership of that party, however, would shed any more light on the real party interest question, so NAR will not be directed to provide it.

Interrogatory number seven and document request number sixteen touch on a different subject. Bound Tree apparently believes (or at least would like to find out) that the prior plaintiff's assets might have been shopped to other potential buyers, and that in the course of doing so, the prior owners expressed some view about the nature or value of the claims against Bound Tree. To the extent that such communications were not privileged, they might be relevant. Therefore, if any such communications happened, NAR will be directed to provide the information asked for in this interrogatory and document request.

        B. <u>Affirmative Defense of Unclean Hands</u>

The discovery requests at issue relating to Bound Tree's affirmative defense of unclean hands include the following:

        **Interrogatory No. 8**: Explain the basis

for each of the following statements and
representations in advertising materials
published by NAR; identify any studies or
analyses that support each of these
statements and representations; and explain
why these statements are not false or
misleading in light of NAR's allegations in
this lawsuit that similar statements by
Bound Tree are false and misleading:

(a) the NAR Laceration Repair Kit provides the
"essential tools necessary to perform minor
surgery or suturing where ever needed"
(specifically explain whether this product
provides all the tools necessary
to perform any surgery generally considered
a "minor" surgery within the medical community
in any possible location, and provide any
supporting basis);

(b) the NAR Rescue Sleeve II is "the most
advanced patient immobilization system"
(specifically explain how this product
is more advanced than any other patient
immobilization systems, and provide any
supporting basis);

(c) the SAM Splint II is the "most versatile
splint ever made" (specifically explain how
this product is more versatile than any other
splint ever made, and provide any supporting
basis);

(d) the Tactical Compression Wrap is "the most
effective and versatile pressure bandage system
ever developed" (specifically explain how this
product is more effective and versatile than any
other pressure bandage system, and provide any
supporting basis);

(e) the King LT-D Kit is the "safest and most
reliable disposable supraglottic airway tool
for emergency ventilation" (specifically explain
how this product is safer and more reliable than
any other disposable airway tool, and provide
any supporting basis);

(f) the NAR Stethoscope is "the most comfortable

-5-

stethoscope manufactured today" (specifically
explain how this product is more comfortable than
any other stethoscope, and provide any supporting
basis);

(g) the Talon II Model 90C is "the most
versatile and compact evacuation litter
available today" (specifically explain how
this product is more versatile and compact
than any other litter, and provide any
supporting basis);

(h) the Talon II Model 81C is the "preferred
litter of U.S. Special Operations Forces" and
is "the most advanced and innovative combat
and evacuation system ever designed"
(specifically explain what makes this
product Special Operations' "preferred litter"
and how this product is more advanced and
innovative than any other evacuation system
ever designed, and provide any supporting
basis).

**Document Request No. 18:** Produce any
documents supporting or relating to any
of the statements and representations
by NAR listed in Interrogatories *(sic)* No. 8,
and produce all documents referred to,
reviewed, or relied upon in responding to
this Interrogatory.

Bound Tree asserts that it is entitled to this information because the doctrine of unclean hands, which, when applied in the context of false advertising claims under the Lanham Act, can be supported by evidence of a party's use of representations similar to those it is challenging. In response, NAR asserts that Bound Tree has misconstrued the unclean hands doctrine and that NAR's advertising practices are irrelevant to this defense. As explained by NAR, whether it falsely advertises its products simply has no bearing on whether Bound Tree has falsely advertised its own products. For the following reasons, the Court concludes that Bound Tree has the more persuasive argument.

In its responsive memorandum, NAR cites to cases, decided primarily under Ohio law, which deal with the nature of the unclean hands defense in contexts very different from a Lanham Act claim. By contrast, the case law cited by Bound Tree, and similar cases, hold both that the unclean hands defense applies to Lanham Act claims and that it involves, as one of its elements, scrutiny of the plaintiff's advertising claims or practices to the extent that they are similar to those in which the defendant has engaged. See Stokely-Van Camp, Inc v. Coca-Cola Co., 646 F.Supp.2d 510 (S.D.N.Y.); see also Rainbow Play Systems, Inc v. Backyard Adventure, Inc., 2009 WL 3150984 (D.S.D. Sept. 28, 2009); Apollo Theater Found. v. Western Int'l Syndication, 2005 WL 1041141 (S.D.N.Y. May 5, 2005). To prevail on such a defense, "a defendant must show that the plaintiff has engaged in 'inequitable conduct or bad faith where the misconduct has a material relation to the equitable relief that plaintiff seeks.'" Stokely, at 533 (quoting Laugh Factory Inc. v. Basciano, 608 F.Supp.2d 549, 560 (S.D.N.Y. 2009)).

As a secondary argument, NAR appears to assert that its conduct could not be material to the clean hands defense unless its conduct relates to the same products about which it asserts that Bound Tree has made false or misleading claims. At least in some courts' view, the doctrine does not appear to be that narrow. "Courts ... have routinely found that a plaintiff's misconduct relates to the subject matter of its claims where, ..., the plaintiff has engaged in the same kind of behavior that it challenges." Id. (citing Procter & Gamble Co. v. Ultreo, Inc. 574 F.Supp.2d 339 (S.D.N.Y. 2008); Morgan Stanley DW, Inc. v. Frisby, 163 F.Supp.2d 1371 (N.D. Ga. 2001); Salomon Smith Barney, Inc. v. Vockel, 137 F.Supp.2d 599 (E.D. Pa. 2000). And that behavior may not be limited to advertising the same kinds of products, but may include using the same kinds of words or

phrases to describe other products.

As explained by Bound Tree, the focus of its unclean hands defense is that NAR's false advertising claim could be barred if NAR itself has made representations similar to the ones it is challenging here. The cases cited above suggest that it can reasonably make such an argument. Whether the argument is ultimately accepted by the Court is not the issue here; rather, it is whether Bound Tree should be allowed to discover sufficient facts to support the argument it intends to make. The Court concludes that it does. Therefore, for discovery purposes, the information Bound Tree seeks in response to Interrogatory number 8 and Document Request number 18 is relevant to its defense and NAR must produce it.

    C.   <u>Communications Involving Four NAR Employees</u>

The discovery requests relating to communications exchanged with four identified NAR representatives include the following:

>**Document Request No. 3**: Produce records of all payments (including any honorarium and research support) paid to or on behalf of (a) Rob Miller, (b) Robert Castellani, (c) John Pruz, and (d) Jun Magpayo for the last five years.
>
>**Document Request No. 6:** Produce all letters, emails, documents, or other correspondence between NAR (or its employees and attorneys) and (a) Rob Miller, (b) Robert Castellani, (c) John Pruz, and (d) Jun Magpayo in the past five years that are related in any way to Bound Tree or to this lawsuit, and any notes or documents related to such correspondence.
>
>**Document Request No. 9:** Produce all letters, emails, or other correspondence between (a) Rob Miller, (b) Robert Castellani, (c) John Pruz, and (d) Jun Magpayo (or anyone acting on their behalf) and

>            any other individuals with whom
>            any of these witnesses had contact
>            related to this lawsuit or related to
>            their expert testimony, and any notes
>            or documents related to such correspondence.

Apparently, these four individuals have been designated as employee witnesses who may be asked to give opinion testimony, and Bound Tree asserts the information is therefore relevant.

Document Request number three is apparently an issue only with respect to Mr. Castellani. NAR asserts that because Mr. Castellani will not be testifying as an expert and will not be compensated for his testimony, this information is irrelevant. Bound Tree claims that the information would still establish his bias or financial incentive to testify in a certain way even if he is not called to give opinion testimony. The Court disagrees and will not compel NAR to produce this data.

In response to Document Request number six, NAR asserts that it has produced responsive documents provided to any of its testifying experts from the date that they were requested to be an expert to the present. NAR objects to providing all documents given to them prior to that date, however. It claims that such information is protected by either the attorney-client or work product privilege and, further, that these documents were not relied upon in developing their expert testimony. Additionally, NAR claims that because it no longer intends to call Mr. Castellani as an expert, and because some of the documents which reflect his communications to the other three individuals are privileged, Bound Tree is not entitled to these documents. In response to Document Request number nine, NAR states that it has produced documents in which its non-retained experts discuss this lawsuit or their expected testimony with any third party. It asserts that being required to produce any information beyond those types of documents would be unduly burdensome.

Although Bound Tree characterizes these requests for communications as "narrowly tailored," Motion to Compel, Doc. #32, at 15, the Court does not agree. Assuming that these four individuals communicate regularly on business matters, a search of all of their correspondence or communications with each other over a five-year period is hardly a narrow one. It is not likely that they kept files of such communications neatly labeled "Bound Tree" or "This Lawsuit." Further, the scope of the request is not limited to communications about Bound Tree which may have been made in the context of this lawsuit; Document Request number eight does not limit the communications to those involving Bound Tree <u>and</u> this lawsuit, but Bound Tree <u>or</u> this lawsuit. Thus, read literally (and Bound Tree has not provided the Court with any proposal to narrow this scope), the request, if enforced, would obligate NAR to search for and produce any communications between or among these four individuals in the past five years that mention Bound Tree in any context. The Court is confident that this would result in a needless waste of effort and the production of many pieces of irrelevant evidence. It is also likely duplicative of other discovery undertaken, or other matters subject to initial disclosure.

The heart of this case is, after all, whether Bound Tree has made false and misleading claims in its advertising. To the extent that any of these witnesses will offer opinions on that subject, the documents they used upon which to base those opinions have already been disclosed. Discovery this far removed from the core issues in this case, and which is not specifically addressed to those issues, is, at the very least, the type of peripheral discovery which the Court should prohibit under the cost-benefit analysis mandated by Fed.R.Civ.P. 26(b)(2)(C).

### D. <u>Additional Discovery Issues</u>

Finally, the Court notes that at the end of a footnote on

the eighteenth, and next to last, page of the motion to compel, Bound Tree invites the Court to order NAR to answer certain written requests contained in Bound Tree's third set of such requests. The footnote acknowledges that, as of the date of the motion, NAR had not responded to these requests, but apparently Bound Tree anticipated receiving objections and wanted the Court to preempt them. The Court is not inclined to address discovery matters raised in this fashion, especially where there has been no extrajudicial effort to resolve them.

### III.  Disposition and Order

Based on the foregoing, Bound Tree's motion to compel (#32) is granted in part and denied in part as set forth above. NAR shall provide the discovery allowed by this order within 21 days.

### IV.  Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge